FILED: September 2, 2015

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

No. 13-4816

(8:12-cr-00229-JFM-1)

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

JEREMY NAUGHTON, a/k/a Jerms Black

Defendant - Appellant

## J U D G M E N T

In accordance with the decision of this court, the judgment of the district court is affirmed in part and vacated in part. This case is remanded to the district court for further proceedings consistent with the court's decision.

This judgment shall take effect upon issuance of this court's mandate in accordance with Fed. R. App. P. 41.

/s/ PATRICIA S. CONNOR, CLERK

**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 13-4816**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JEREMY NAUGHTON, a/k/a Jerms Black,

Defendant - Appellant.

Appeal from the United States District Court for the District of
Maryland, at Greenbelt.    J. Frederick Motz, Senior District
Judge.    (8:12-cr-00229-JFM-1)

Argued:  May 13, 2015              Decided:  September 2, 2015

Before KING and KEENAN, Circuit Judges, and DAVIS, Senior
Circuit Judge.

Affirmed in part, vacated in part, and remanded by unpublished
opinion.   Judge Keenan wrote the opinion, in which Judge King
and Senior Judge Davis joined.

**ARGUED:** Meghan Suzanne Skelton, OFFICE OF THE FEDERAL PUBLIC
DEFENDER, Greenbelt, Maryland, for Appellant.    Sujit Raman,
OFFICE OF THE UNITED STATES ATTORNEY, Greenbelt, Maryland, for
Appellee.  **ON BRIEF:** James Wyda, Federal Public Defender, OFFICE
OF THE FEDERAL PUBLIC DEFENDER, Baltimore, Maryland, for
Appellant.   Rod J. Rosenstein, United States Attorney, Mark W.
Crooks, Paul Budlow, Assistant United States Attorneys, James D.
Houghton, Student Law Clerk, OFFICE OF THE UNITED STATES
ATTORNEY, Baltimore, Maryland, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.

BARBARA MILANO KEENAN, Circuit Judge:

Jeremy Naughton was convicted by a jury of numerous charges arising from his involvement in an interstate sex trafficking enterprise.   On appeal, Naughton challenges: (1) the district court's denial of his motions to suppress certain evidence obtained from two warrantless searches of an apartment he formerly occupied; and (2) his conviction under 18 U.S.C. § 924(c) for brandishing a firearm in furtherance of a crime of violence, namely, conspiracy to commit sex trafficking in violation of 18 U.S.C. § 1594(c).

Upon our review, we affirm the district court's denial of Naughton's motions to suppress.   We hold that one of the searches was conducted lawfully based on the police officers' reasonable belief that Naughton had abandoned any interest in the apartment.   With respect to the other search, we conclude that any error in admitting into evidence certain items seized was harmless beyond a reasonable doubt.   However, we vacate Naughton's conviction under Section 924(c), because we conclude that the district court plainly erred in determining that conspiracy to commit sex trafficking qualifies as a crime of violence.

3

I.

We begin by describing the facts relevant to the two searches at issue in this appeal. Because the district court denied Naughton's motions to suppress the evidence obtained during these searches, we construe the evidence in the light most favorable to the government. United States v. Montieth, 662 F.3d 660, 664 (4th Cir. 2011) (quotation marks and citation omitted).

The first search took place on September 22, 2010 (the September search), after an unidentified woman placed a telephone call to a "911 operator" in Brooklyn, New York, to report an ongoing incident at 322 Marcus Garvey Boulevard, Apartment 2R (the apartment, or Naughton's apartment). The government later offered evidence establishing that Naughton had leased and had lived in this apartment.

The unidentified caller stated that she had received a "text message" on her cellular telephone from a female friend who reported that she was being held against her will in the apartment by a man in possession of a firearm. The caller did not identify herself, her friend, or the perpetrator, and did not provide any additional information to the emergency operator.

When the officers arrived at the apartment building, the external door to the building was open, and the officers entered

4

the building and climbed the stairs to the second-floor apartment. The officers "constantly knock[ed]" on the apartment door for about three minutes, while identifying themselves as police. No one responded.

The officers did not observe any obvious criminal activity outside the building, nor did they see or hear anything unusual in the area of the apartment. Additionally, the officers did not attempt to communicate with neighbors to inquire about the reported incident. After a few minutes had passed, several officers climbed the fire escape to enter the apartment through a window.

Upon entering the apartment, the officers found no one inside.[1] The officers seized a handgun and ammunition that were lying on a counter in plain view.

Officers searched the same apartment again on June 2, 2011 (the June search), after two Assistant United States Attorneys from Maryland, a detective from the Montgomery County, Maryland Police Department, and a detective from the New York City Police Department went to the apartment to obtain a photograph of the building. When the four individuals (the officers) arrived at the apartment building, an officer rang several of "the buzzers"

---

[1] Law enforcement officers later determined that the telephone call to the emergency services operator was a hoax.

5

in an effort to enter the locked exterior door of the building. A woman dressed in a bathrobe responded to the front door of the building. After the woman identified herself as the landlord and superintendent of the building, the officers did not ask her to produce verifying identification.

The woman informed the officers that Naughton's apartment "was vacant," that she had not seen Naughton in "a couple weeks," and that he had been evicted. She explained that she had arranged for the apartment to be cleaned the next day, and that the locks to the apartment had been changed. Although the woman did not have the new keys to the apartment, she attempted to contact her sister, the other co-landlord of the building who allegedly retained the new keys, but did not succeed in reaching her.

Although the door to the apartment was locked, two officers entered the landlord's apartment at her suggestion, climbed up the fire escape, and entered Naughton's apartment through a window. The apartment was "dirty" and "in disarray," and the officers discovered and seized numerous items, including used condoms and women's clothing.

Following further investigation into Naughton's involvement in an interstate sex trafficking enterprise, a grand jury issued a 16-count superseding indictment charging Naughton with: one count of conspiracy to commit sex trafficking, in violation of

6

18 U.S.C. § 1594(c) (count 1); one count of using, carrying, and brandishing a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c) (count 2); six counts of sex trafficking, in violation of 18 U.S.C. § 1591 (counts 3, 4, 6, 8, 11, and 12); six counts of transporting an individual to engage in prostitution, in violation of 18 U.S.C. § 2421 (counts 5, 7, 9, 10, 13, and 16); one count of kidnapping, in violation of 18 U.S.C. § 1201(a)(1) (count 14); and one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) (count 15).

Before trial, Naughton moved to suppress the firearm and ammunition seized during the September search, as well as the items seized during the June search. After the district court held an evidentiary hearing, the court denied Naughton's motions to suppress.

Following a 14-day trial in which seven victims and former prostitutes testified as part of the government's case, a jury convicted Naughton of most of the charges, acquitting him only of the charges in counts 3, 11, 14, and 15. The district court imposed a total sentence of 36 years' imprisonment, which included a consecutive sentence of 84 months' imprisonment on count 2 for brandishing a firearm in furtherance of a crime of violence. The district court denied Naughton's motions for judgment of acquittal. This appeal followed.

7

II.

On appeal, Naughton challenges the district court's denial
of his motions to suppress evidence seized in the two searches
of the apartment. He also challenges his conviction under count
2, for brandishing a firearm in furtherance of a crime of
violence in violation of 18 U.S.C. § 924(c).

A.

We first address Naughton's arguments relating to the two
searches.   In considering a district court's denial of motions
to suppress evidence, we review the court's legal conclusions de
novo and its factual findings for clear error.    Montieth, 662
F.3d at 664.

i.

Naughton argues that the June search of the apartment was
an unreasonable search in violation of the Fourth Amendment and
that, therefore, the district court erred in admitting the
evidence seized during the search.   Naughton contends that he
maintained a protected privacy interest in the apartment because
he had not been issued an order of eviction before the time of
the search.   Accordingly, Naughton asserts that the officers
violated his Fourth Amendment rights by entering his apartment
without a warrant and without his consent.    Naughton also
maintains that the officers unreasonably relied on the
representations made by the purported landlord that Naughton had

8

abandoned his interest in the apartment. We disagree with Naughton's arguments.

The Fourth Amendment guarantees the right of individuals "to be secure in their persons, houses, papers, and effects," and affords protection from "unreasonable searches and seizures." U.S. Const. amend. IV. These Fourth Amendment protections extend to an individual occupying a residence under a lease. United States v. Stevenson, 396 F.3d 538, 546 (4th Cir. 2005) (citing Chapman v. United States, 365 U.S. 610, 616-17 (1961)). Thus, a landlord or building owner typically cannot consent to a warrantless search of a tenant's leasehold property. Chapman, 365 U.S. at 616-17.

Generally, a search of an individual's residence conducted without a warrant and without proper consent is unreasonable, based on the individual's reasonable expectation of privacy in his residence. Kyllo v. United States, 533 U.S. 27, 31-33 (2001). However, when an individual "voluntarily abandons his privacy interest in property, his subjective expectation of privacy becomes unreasonable, and he is precluded from seeking to suppress evidence seized from it." Stevenson, 396 F.3d at 546; see also United States v. Hoey, 983 F.2d 890, 892 (8th Cir. 1993) ("The warrantless search of abandoned property does not constitute an unreasonable search").

9

In determining whether an individual has abandoned his privacy interest in this context, we focus not simply on whether "all formal property rights have been relinquished." Stevenson, 396 F.3d at 546.  Instead, we consider all the objective facts available to the officers at the time of the search, and any surrounding circumstances such as whether the tenant has paid the rent due, whether the tenant has communicated an intent to abandon the premises, and whether the tenant has vacated the property.  Id. at 546-47; United States v. James, 534 F.3d 868, 873 (8th Cir. 2008).

In the present case, we conclude that the objective evidence available to the officers showed that Naughton had abandoned his privacy interest in the apartment, despite the fact that his tenancy had not formally expired at the time of the June search.  Most notably, the district court found credible the officers' testimony that the woman who identified herself as Naughton's landlord had told the officers that the apartment had been vacant for two weeks, and that the locks on the apartment had been changed.  We discern no clear error in the district court's factual findings.  See Montieth, 662 F.3d at 664.

Additionally, we conclude that the record supports the district court's determination that the officers reasonably believed that they were speaking to the landlord, and that she

10

had provided reliable information regarding Naughton's intent to vacate his apartment on a permanent basis. When the woman answered the door to the building wearing a bathrobe, providing circumstantial evidence that the woman lived in the building, she also identified herself as the landlord. She was able to answer questions about where Naughton's apartment was located, when she last had seen Naughton, and the statements he had made regarding his intent to vacate the apartment.

The woman further informed the officers that Naughton had been evicted, that he had "taken what [personal property] he wanted and left the rest," and that the apartment was scheduled to be cleaned the next day. Moreover, the woman attempted, in the officers' presence, to contact her sister and co-landlord to obtain a key to the apartment. Thus, the fact that the woman did not have a key to the apartment did not undermine the reliability of her representations to the officers. Based on these circumstances, we hold that the district court did not err in concluding that the officers reasonably relied on her representations indicating that Naughton had abandoned his privacy interest in the apartment.

Our conclusion is not altered by the fact that the officers were able to see inside the apartment through a window before entering, and observed several items including some furniture and personal belongings. Not only did the woman identifying

11

herself as the landlord inform the officers that Naughton had told her that he had removed what belongings he wanted, but the officers also saw that the apartment was "in disarray" and "dirty." See United States v. Harrison, 689 F.3d 301, 311 (3d Cir. 2012) (observing that the fact that the inside of a house was dilapidated or "trashed," in conjunction with a "rundown" exterior, provided probative evidence of abandonment).

The totality of the circumstances therefore supported the district court's determination that the officers had a reasonable basis for concluding that Naughton had abandoned his tenancy, thereby permitting the officers to enter the apartment without a search warrant and without Naughton's consent. Accordingly, we hold that the district court did not err in denying Naughton's motion to suppress the items seized during the June search.

ii.

Naughton next argues that the district court erred in refusing to suppress the firearm and ammunition seized during the September search of the apartment, which the police entered based on the information they received in the anonymous telephone call. Citing Kerman v. City of New York, 261 F.3d 229, 236 (2d Cir. 2001), Naughton contends that because the "911 call" and the surrounding circumstances did not manifest any indicia to support the reliability of the caller's statement,

12

the officers were not justified in entering his apartment
without a warrant.

Although the government contends that the officers properly
entered the apartment to investigate the report of imminent harm
to a victim, the government alternatively maintains that we need
not decide this issue because the admission of the seized
firearm and ammunition was harmless beyond a reasonable doubt.
See Chapman v. California, 386 U.S. 18, 24 (1967). We agree
with the government's harmless error analysis.

We will assume, without deciding, that the September search
violated Naughton's Fourth Amendment rights. Before we may
conclude that a constitutional error was harmless beyond a
reasonable doubt, we must determine based on the entire record
that the error "did not contribute" to the defendant's
convictions. United States v. Holness, 706 F.3d 579, 598 (4th
Cir. 2013) (citation omitted); see also United States v. Abu
Ali, 528 F.3d 210, 256 (4th Cir. 2008) (we must "be able to say
with fair assurance, after pondering all that happened without
stripping the erroneous action from the whole, that the judgment
was not substantially swayed by the error") (citation omitted).
This standard is more rigorous than determining whether the
evidence was sufficient to support the convictions in the
absence of the erroneously admitted evidence. Holness, 706 F.3d
at 598.

The record before us contains overwhelming evidence detailing Naughton's use of firearms during the course of his sex trafficking operation, rendering the admission of the firearm and ammunition harmless beyond a reasonable doubt. Several victim prostitutes involved in Naughton's sex trafficking enterprise testified against him, and most of these victims described Naughton's regular use of firearms, including both a handgun similar to the one seized during the September search as well as a larger machine gun.

These victims stated that Naughton routinely possessed a firearm in his waistband, in the console of his car, in the trunk of his car, and in his apartment. One victim related that Naughton kept a firearm with him "at all times." Also, multiple victims described incidents in which Naughton had used a gun in their presence.

One victim testified regarding an incident in which Naughton carried a machine gun into a room and set it down on the dresser. According to that witness, Naughton had stated that the gun was "for silly bitches like" her, causing her to believe that he would kill her if she tried to leave. Another victim identified a machine gun in a photograph, indicating that Naughton had maintained possession of the gun in her presence.

The evidence also included a video and numerous photographs depicting Naughton brandishing firearms, including both handguns

14

and machine guns. In addition, the government introduced into evidence audio recordings in which Naughton referred to his use of firearms in relation to his sex trafficking enterprise.

In light of this voluminous evidence linking Naughton's use of firearms to his sex trafficking operation, we conclude that the handgun and ammunition displayed at the trial, which were seized in the September search, could not have affected the jury's ultimate findings of guilt. Although the government referred to the firearm and ammunition during closing arguments, these references were minor in relation to the overwhelming testimonial and photographic evidence. Therefore, we hold that any error resulting from the admission of evidence seized in the September search was harmless beyond a reasonable doubt.

B.

Finally, we address Naughton's challenge to his conviction under count 2, for brandishing a firearm in furtherance of a crime of violence, in violation of Section 924(c). This conviction was based on the predicate offense of conspiracy to commit sex trafficking by force, fraud or coercion, in violation of Section 1594(c). Naughton contends that this predicate offense does not qualify categorically as a crime of violence and that, therefore, we should vacate his conviction on the brandishing charge.

15

In response, the government argues that conspiracy to commit sex trafficking qualifies as a crime of violence under Section 924(c), because the crime necessarily involves a grave risk that a defendant or others will use physical force against the victims of the crime. We disagree with this argument, which is foreclosed by our recent decision in United States v. Fuertes, Nos. 13-4755, 13-4931, 2015 U.S. App. LEXIS 14475 (4th Cir. Aug. 18, 2015).[2]

As an initial matter, we observe that Naughton's objection in the district court relating to count 2 was limited to his motion for judgment of acquittal challenging the sufficiency of the evidence. As we explained in Fuertes, such a motion does not preserve a purely legal argument such as the one presented here. See Fuertes, 2015 U.S. App. LEXIS 14475, at *21-22. Accordingly, we review for plain error Naughton's challenge to his conviction under count 2. Id. (citing United States v. Tillery, 702 F.3d 170, 175 (4th Cir. 2012)). To prevail under

_____

[2] The government also asserts that Naughton waived his argument regarding count 2, because his own proposed jury instruction assumed that conspiracy to commit sex trafficking qualified as a crime of violence. We disagree. Waiver is "the intentional relinquishment or abandonment of a known right." United States v. Robinson, 744 F.3d 293, 298 (4th Cir. 2014) (citation omitted). In the context of this case, Naughton's proposed jury instruction did not qualify as the identification of an issue, followed by explicit withdrawal of that issue, so as to constitute waiver. See id.

16

the plain error standard of review, Naughton must show that the
district court erred, that the error was "clear or obvious,
rather than subject to reasonable dispute," that the error
affected Naughton's substantial rights, and that the error
"seriously affect[ed] the fairness, integrity or public
reputation of judicial proceedings." United States v. Marcus,
560 U.S. 258, 262 (2010).

We therefore turn to address the issue whether the district
court erred in concluding that conspiracy to commit sex
trafficking, in violation of 18 U.S.C. § 1594(c), qualifies as a
crime of violence under 18 U.S.C. § 924(c). Section 1594(c)
establishes a crime for conspiracy to violate 18 U.S.C. § 1591.
Section 1591 generally prohibits an individual from affecting
interstate commerce by enticing, providing, obtaining,
recruiting, harboring, transporting, or maintaining a person, or
benefitting from such conduct, by "means of force, threats of
force, fraud, coercion, or any combination of such means . . .
to cause the person to engage in a commercial sex act."
§ 1591(a) (emphasis added).

As relevant to this case, to prove a conviction under
Section 924(c), the government needed to show that Naughton
knowingly possessed, used, carried, or brandished a firearm in
furtherance of a crime of violence. Under the definition in
Section 924(c), a "crime of violence" is a felony that

17

(A) has as an element the use, attempted use, or
threatened use of physical force against the person or
property of another [the force clause], or

(B) that by its nature, involves a substantial risk
that physical force against the person or property of
another may be used in the course of committing the
offense [the residual clause].

18 U.S.C. § 924(c)(3).

Our inquiry whether the predicate offense qualifies as a
crime of violence does not permit our review of the conduct
underlying Naughton's conviction, but allows us to consider only
"the statutory definition of the [] crime and the fact of
conviction to determine whether the conduct criminalized by the
statute, including the most innocent conduct, qualifies as a
'crime of violence.'"  United States v. Royal, 731 F.3d 333,
341-42 (4th Cir. 2013).  If any one of the available means of
violating the statute is non-violent, under the categorical
approach the offense is not a crime of violence within the
meaning of the force clause irrespective of the defendant's
actual conduct.[3]  Descamps v. United States, 133 S. Ct. 2276,
2285-86 (2013); Fuertes, 2015 U.S. App. LEXIS 14475, at *23-25.
Similarly, if we conclude that the elements of conspiracy to

────────────────────

[3] The categorical approach applies only to "indivisible
statutes."  Under Descamps v. United States, 133 S. Ct. 2276
(2013), a statute is divisible only if it "comprises multiple,
alternative versions of the crime" by "list[ing] multiple,
alternative elements."  133 S. Ct. at 2284-85.  As we explained
in Fuertes, Section 1591 is an indivisible statute.  Fuertes,
2015 U.S. App. LEXIS 14475, at *24.

18

commit sex trafficking do not involve a substantial risk that the perpetrator of the crime will use physical force against the victim, then the crime categorically does not qualify as a crime of violence under the residual clause. See Fuertes, 2015 U.S. App. LEXIS 14475, at *26-29.

In Fuertes, we held that because the crime of sex trafficking under Section 1591 can be committed by force or by fraud or coercion, the offense does not have "as an element the use, attempted use, or threatened use of physical force" required by the force clause. Id. at *25-26. We also held that sex trafficking does not qualify as a crime of violence under the residual clause, because in the ordinary case, a perpetrator's possible conduct under the elements of the offense includes several different ways that the crime could be committed in a non-violent manner. See id. at *28-31, 31 n.6.

Although the predicate offense at issue here involves a conspiracy to commit sex trafficking, rather than the actual crime of sex trafficking, that distinction does not alter our analysis or our application of the holding in Fuertes, because a conspiracy cannot be "divorced from its violent [or nonviolent] objective." See United States v. White, 571 F.3d 365, 373 (4th Cir. 2009) (holding that conspiracy to commit robbery with a dangerous weapon involves a violent object of the conspiracy and is a crime of violence under Section 924(e)). Therefore, we

19

hold that the district court erred in determining that
conspiracy to commit sex trafficking qualified as a crime of
violence under Section 924(c).

We also conclude, as explained in Fuertes, that this error
was plain.   Fuertes, 2015 U.S. App. LEXIS 14475, at *29-31.
With respect to the force clause, the Supreme Court's holding in
Descamps made clear that because one of the means of violating
Section 1591 is non-violent, the offense does not qualify as a
crime of violence.   Descamps, 133 S. Ct. at 2285-86; see also
Fuertes, 2015 U.S. App. LEXIS 14475, at *29-30 (explaining that
although Descamps had not been decided at the time of trial, the
error became plain on appeal in accordance with Henderson v.
United States, 133 S. Ct. 1121, 1130 (2013)).   Similarly, with
respect to the residual clause, because sex trafficking can be
committed by force, fraud, or coercion, the offense plainly does
not categorically involve a substantial risk that the defendant
will use physical force in the course of committing the offense.[4]
Fuertes, 2015 U.S. App. LEXIS 14475, at *29-31, 31 n.6.

---

[4] The parties in this case submitted supplemental briefing
on the potential impact of Johnson v. United States, 135 S. Ct.
2551 (2015), in which the Supreme Court held that the residual
clause   set   forth   in   18   U.S.C.   § 924(e)(2)(B)   was
unconstitutionally vague.   The residual clause struck down in
Johnson contains similar but not identical language to the
residual clause at issue in the present case under 18 U.S.C.
§ 924(c)(3)(B).   However, we need not examine whether the
holding in Johnson impacts the constitutionality of the residual
(Continued)

Finally, we hold that this error affected Naughton's substantial rights as well as the fairness, integrity, and public reputation of judicial proceedings, because Naughton received an additional sentence of 84 months' imprisonment based on his erroneous conviction under Section 924(c). See Fuertes, 2015 U.S. App. LEXIS 14475, at *31-32. Accordingly, because conspiracy to commit sex trafficking does not categorically qualify as a crime of violence, we vacate Naughton's conviction under Section 924(c), and remand the remaining convictions to the district court for resentencing.

### III.

For these reasons, we affirm Naughton's convictions on counts 1, 4, 5, 6, 7, 8, 9, 10, 12, 13, and 16. We vacate Naughton's conviction on count 2, for brandishing a firearm during a crime of violence in violation of 18 U.S.C. § 924(c).

_____

clause here, because we invalidate application of that clause on the separate basis that a perpetrator's possible conduct under the elements of sex trafficking includes several different ways that the crime could be committed in a non-violent manner. See Fuertes, 2015 U.S. App. LEXIS 14475, at *26-27 n.5 (citing the principle of constitutional avoidance in accordance with Ashwander v. Tenn. Valley Auth., 297 U.S. 288, 346-48 (1936)).

21

Accordingly, we remand the remaining convictions to the district
court for resentencing.

AFFIRMED IN PART,
VACATED IN PART,
AND REMANDED

.

FILED: September 2, 2015

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 13-4816,   US v. Jeremy Naughton
8:12-cr-00229-JFM-1

---

NOTICE OF JUDGMENT

---

Judgment was entered on this date in accordance with Fed. R. App. P. 36. Please be advised of the following time periods:

**PETITION FOR WRIT OF CERTIORARI:** To be timely, a petition for certiorari must be filed in the United States Supreme Court within 90 days of this court's entry of judgment. The time does not run from issuance of the mandate. If a petition for panel or en banc rehearing is timely filed, the time runs from denial of that petition. Review on writ of certiorari is not a matter of right, but of judicial discretion, and will be granted only for compelling reasons. (www.supremecourt.gov)

**VOUCHERS FOR PAYMENT OF APPOINTED OR ASSIGNED COUNSEL:** Vouchers must be submitted within 60 days of entry of judgment or denial of rehearing, whichever is later. If counsel files a petition for certiorari, the 60-day period runs from filing the certiorari petition. (Loc. R. 46(d)). If payment is being made from CJA funds, counsel should submit the CJA 20 or CJA 30 Voucher through the CJA eVoucher system. In cases not covered by the Criminal Justice Act, counsel should submit the Assigned Counsel Voucher to the clerk's office for payment from the Attorney Admission Fund. An Assigned Counsel Voucher will be sent to counsel shortly after entry of judgment. Forms and instructions are also available from the clerk's office or from the court's web site, www.ca4.uscourts.gov, or from the clerk's office.

**BILL OF COSTS:** A party to whom costs are allowable, who desires taxation of costs, shall file a Bill of Costs within 14 calendar days of entry of judgment. (FRAP 39, Loc. R. 39(b)).

**PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC:** A petition for rehearing must be filed within 14 calendar days after entry of judgment, except that in civil cases in which the United States or its officer or agency is a party, the petition must be filed within 45 days after entry of judgment. A petition for rehearing en banc must be filed within the same time limits and in the same document as the petition for rehearing and must be clearly identified in the title. The only grounds for an extension of time to file a petition for rehearing are the death or serious illness of counsel or a family member (or of a party or family member in pro se cases) or an extraordinary circumstance wholly beyond the control of counsel or a party proceeding without counsel.

Each case number to which the petition applies must be listed on the petition to identify the cases to which the petition applies and to avoid companion cases proceeding to mandate during the pendency of a petition for rehearing in the lead case. A timely filed petition for rehearing or petition for rehearing en banc stays the mandate and tolls the running of time for filing a petition for writ of certiorari.

A petition for rehearing must contain an introduction stating that, in counsel's judgment, one or more of the following situations exist: (1) a material factual or legal matter was overlooked; (2) a change in the law occurred after submission of the case and was overlooked; (3) the opinion conflicts with a decision of the U.S. Supreme Court, this court, or another court of appeals, and the conflict was not addressed; or (4) the case involves one or more questions of exceptional importance. A petition for rehearing, with or without a petition for rehearing en banc, may not exceed 15 pages. Copies are not required unless requested by the court. (FRAP 35 & 40, Loc. R. 40(c)).

**MANDATE:** In original proceedings before this court, there is no mandate. Unless the court shortens or extends the time, in all other cases, the mandate issues 7 days after the expiration of the time for filing a petition for rehearing. A timely petition for rehearing, petition for rehearing en banc, or motion to stay the mandate will stay issuance of the mandate. If the petition or motion is denied, the mandate will issue 7 days later. A motion to stay the mandate will ordinarily be denied, unless the motion presents a substantial question or otherwise sets forth good or probable cause for a stay. (FRAP 41, Loc. R. 41).